EXHIBIT D

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: ☐ FEPA ☒ EEOC

Agency(ies) Charge No(s):

Texas Workforce Commission and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Terry McKenzie Jr. | (409) 237-8611 | 4/30/1978 |

Street Address / City, State and ZIP Code

c/o Consumer Attorneys PLLC, Emanuel Kataev, 68-29 Main Street Flushing, NY 11367, ekataev@consumerattorneys.com

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two are named, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Helena Laboratories Corporation | 15+ | (800) 231-5663 |

Street Address / City, State and ZIP Code

1530 Lindbergh Drive Beaumont, TX 77707

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| N/A | N/A | N/A |

Street Address / City, State and ZIP Code

N/A

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (*Specify*)

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 09/19/2022 Latest: 06/25/2024

☒ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

Please see attached.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State or Local Agency Requirements*

Adilene Najera

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

2/21/25 [signature]

Date — *Charging Party Signature*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) 02/21/2025

ADILENE NAJERA
NOTARY PUBLIC, STATE OF TEXAS
COMM. EXPIRES 05/07/2025
NOTARY ID # 13308782-0

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charge No(s):

☐ FEPA

☒ EEOC

Texas Workforce Commission and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

Please see attached complaint.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

2/21/25 [signature]

Date *Charging Party Signature*

NOTARY – *When necessary for State or Local Agency Requirements*

Adilene Najera

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

[signature]

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

02/21/2025

ADILENE NAJERA
NOTARY PUBLIC, STATE OF TEXAS
COM. EXPIRES 05/07/2028
NOTARY ID # 13308702-0

EXHIBIT D

CONSUMER ATTORNEYS

**Emanuel Kataev, Esq. | Attorney**
D: (917) 807-7819
E: ekataev@consumerattorneys.com

February 21, 2025

**VIA EMAIL**
United States
Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, NY 10004-2107
newyfaxenf@eeoc.gov

***Re:*** **Terry McKenzie Jr. v. Helena Laboratories Corporation**

Dear Sir or Madam:

Our firm represents Terry McKenzie Jr. (hereinafter "McKenzie"), a former employee of Helena Laboratories Corporation ("Helena") in the above-referenced matter.

According to the information provided by our client, it appears that Helena's actions have violated the Family and Medical Leave Act ("FMLA") (42 U.S.C. §§ 12101 to 12213), the Americans with Disabilities Act's ("ADA"), as amended by the ADA Amendments Act ("ADAAA") (42 U.S.C. §§ 12101 to 12213), as well as the Texas Disability Act ("TDA"), Texas Human Resources Code §§ 121, *et seq.* by interfering with McKenzie's right to unpaid leave, failing to afford McKenzie a reasonable accommodation and otherwise discriminating against him due to his disability and serious health condition.

We write to submit the following EEOC charge.

## FAMILY MEDICAL LEAVE ACT

***McKenzie 's Exemplary Performance for Helena***

McKenzie worked for Helena for two (2) years. McKenzie began working for Helena via a temp agency known as Kelly Services in or around January 9, 2022, and proceeded to be hired directly by Helena in a permanent position on or about September 19, 2022. For two (2) years, McKenzie continued to perform at a satisfactory level with only minor complaints from management related to his job performance in the form of constructive criticism.

***McKenzie Notifies Helena of His Request for a Medical Leave.***

On January 3, 2024, McKenzie discovered that he had a brain tumor. As a result, McKenzie notified Helena on January 4, 2024, that he would be required to take leave and inquired whether there were any documents that required his signature. Helena responded in a hostile manner to McKenzie 's request and never provided McKenzie FMLA certification paperwork or engaged with him in any interactive process as is required by law.

This is despite the fact McKenzie obtained medical records supporting his need for leave as a reasonable accommodation, and provided them to Helena. Instead, McKenzie was never provided any information of his rights under the FMLA.

***Helena Interfered with McKenzie 's Right to Take FMLA Leave.***

Despite McKenzie 's numerous requests for protected medical leave, Helena refused to acknowledge his request and failed to inform McKenzie of his eligibility for protected FMLA leave. McKenzie only became aware of his eligibility for FMLA leave on April 30, 2024, two (2) days before his brain tumor removal surgery scheduled for May 2, 2024.

When McKenzie requested the paperwork for FMLA leave, Helena informed him that he had been terminated for job abandonment despite never having notified McKenzie of his rights under the FMLA.

***Helena's Liability for Interference in Violation of the FMLA***

Helena's actions have exposed it to liability under the FMLA for interference with McKenzie's rights under the FMLA (29 U.S.C. § 2615(a)(1)). McKenzie met the requirement for eligibility under the FMLA due to his serious health condition, and was eligible as an employee who worked for more than a year and had worked at least 1,250 hours for Helena. Helena was also required to restore McKenzie to his previous position when he returned from leave (29 C.F.R. § 825.220(b)). Rather than doing so, Helena fired McKenzie before he could ever take the leave afforded to him under the law.

As a result of Helena' actions, McKenzie has suffered significant damages, including monetary losses, loss of benefits, medical costs, attorneys' fees and costs. A jury is also likely to find that McKenzie is entitled to liquidated damages due to Helena' lack of good faith for its actions.

## AMERICANS WITH DISABILITIES ACT & TEXAS DISABILITY ACT

***McKenzie Notifies Helena of his Disability and Requests a Reasonable Accommodation.***

As set forth above, on January 3, 2024, McKenzie discovered that he had a brain tumor. McKenzie underwent surgery to remove his brain tumor on May 2, 2024, during which time he had been terminated by Helena for job abandonment despite having requested reasonable accommodations for his serious medical condition and disability.

McKenzie spoke to his supervisor and human resources representatives at Helena and provided them medical documentation. Rather than expressing concern for the employee of nearly two (2) years, Helena coldly ignored him. When McKenzie asked Helena if he could be rehired after being unlawfully terminated, Helena made no effort to hide their frustration with his request and told McKenzie that his position is no longer available.

***Helena Failed to Engage with McKenzie in the Interactive Process and Failed to Provide a Reasonable Accommodation.***

McKenzie made multiple attempts to report to work during this period. However, McKenzie discovered that he was terminated on April 30, 2024, despite having requested reasonable accommodations in light of his diagnosis and upcoming surgery.

Indeed, McKenzie underwent surgery on May 2, 2024, and, after recovering, was cleared to return to the work on June 25, 2024, with the expectation of resuming his previous position.

***Helena Retaliated Against McKenzie for his Reasonable Accommodation Requests.***

Instead of engaging in the interactive process required under the Americans with Disabilities Act (ADA) and TDA, Helena willfully disregarded McKenzie's requests for a reasonable accommodation and retaliated against him by terminating his employment.

Specifically, on April 30, 2024, Helena notified McKenzie that he had been terminated on the pretext that there had been no communication from him. However, McKenzie had made multiple efforts to return to work, including visiting the workplace on several occasions and inquiring with his supervisor and human resources about any necessary documents he needed, in addition to the fact that he informed Helena about his condition and the sudden need for a surgery in light of his diagnosis.

Contrary to what was stated to McKenzie, Helena was fully aware of his surgery and the need for time to recover. This action was taken despite McKenzie's explicit intention to return to work by late June 2024 as his doctor informed him and McKenzie relayed to Helena.

In sum, after repeated requests and follow-up, Helena responded to McKenzie's requests for a reasonable accommodation by summarily firing him in violation of the law. Specifically, Helena informed him that he could not have his job back. However, such action was clearly pretext for McKenzie's earlier requests for an accommodation.

***Helena's Liability for Failure to Accommodate & Retaliation in Violation of the ADA & TDA.***

Helena's actions have exposed it to liability under the ADA and TDA for failure to engage in the interactive process, failure to accommodate a disability, and retaliation. McKenzie's medical condition meets the disability definition (42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1)) and his limitation on lifting and standing, among other things, is a major life activity under the ADAAA (42 U.S.C. § 12102(2)(A) and 29 C.F.R. § 1630.2(i).)

Following McKenzie's request, management retaliated against McKenzie by firing him. Courts have found sufficient temporal proximity in support of a retaliation claim in cases where *years* have passed between the protected activity and retaliatory conduct. See Fischer v. United Parcel Service, Inc., 390 Fed. Appx. 465 (6th Cir. 2010) (two-year gap between protected activity and retaliation did not defeat retaliation claim). In this case, only a few months have passed since McKenzie's requests and Helena's retaliatory actions.

As a result of Helena's unlawful conduct in response to his request for a reasonable accommodation, McKenzie was fired. Rather than discipline management, Helena decided to implement management's decision to fire McKenzie. Therefore, Helena's actions violated the ADA's and TDA's prohibition against taking adverse actions against employees who request a reasonable accommodation (see Wright v. CompUSA, Inc., 352 F.3d 472, 477 (1st Cir. 2003)).

Should this matter proceed to litigation, a jury would undoubtedly find that Helena retaliated against McKenzie following his requests for a reasonable accommodation.

McKenzie has suffered significant damages including monetary losses, emotional distress, loss of benefits, medical costs, and attorneys' fees and costs. As a result, McKenzie is asserting the following damages due to his claims against Helena:

- Loss of back pay in the amount of $29,687.50;
- Loss of front pay in the amount of $30,875.00.
- Pain and suffering damages in the amount of $150,000.00
- Reimbursement of attorneys' fees and costs in the amount of $5,000.00
- TOTAL DAMAGES: $215,562.50

McKenzie respectfully requests that the EEOC processes, investigates, and conciliates this charge.

Dated: Flushing, New York
February 21, 2025

Respectfully submitted,

**CONSUMER ATTORNEYS PLLC**

*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
ekataev@consumerattorneys.com

*Attorneys for Charging Party*
*Terry McKenzie Jr.*