**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

TERRY MCKENZIE, JR.,

Plaintiff,

v.

HELENA LABORATORIES CORPORATION,

Defendant.

Case No.: 1:25-cv-572 (MJT)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**CONSUMER ATTORNEYS, PLLC**
Emanuel Kataev, Esq.
6829 Main Street
Flushing, NY, 11367-1305
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
ekataev@consumerattorneys.com

*Attorneys for Plaintiff*
*Terry McKenzie, Jr.*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................ 1

RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF GENUINE ISSUES ........................................ 1

STANDARD OF REVIEW ........................................................................ 6

ARGUMENT ........................................................................ 9

I. Defendant's Assertions Regarding the Status of Discovery Do Not Eliminate the Genuine Factual Disputes Presented. ........................................ 9

II. Defendant's Limitations Argument Does Not Address Plaintiff's Allegations Concerning Subsequent Refusals to Rehire Him. ........................................ 10

III. Plaintiff's FMLA Retaliation Claim Survives Summary Judgment Because He Was Not Required to Formally Apply for FMLA Leave. ........................................ 14

IV. Genuine Disputes of Material Fact Exist Concerning Whether Defendant Terminated Plaintiff in Retaliation for His Request for Medical Leave. ........................................ 16

CONCLUSION ........................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

Acker v. Gen. Motors, L.L.C.,
853 F.3d 784 (5th Cir. 2017) ........ 18

Allen v. Coil Tubing Servs., L.L.C.,
846 F. Supp. 2d 678 (S.D. Tex. 2012), aff'd, 755 F.3d 279 (5th Cir. 2014) ........ 8

AMTRAK v. Morgan,
536 U.S. 101 (2002) ........ 12

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ........ 6, 9

Bank of La. v. Aetna U.S. Healthcare, Inc.,
468 F.3d 237 (5th Cir. 2006) ........ 9

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ........ 6, 7

Chardon v. Fernandez,
454 U.S. 6 (1981) ........ 11

Clark Cnty. Sch. Dist. v. Breeden,
532 U.S. 268 (2001) ........ 17

Del. State Coll. v. Ricks,
449 U.S. 250 (1980) ........ 11

E.E.O.C. v. LHC Grp., Inc.,
773 F.3d 688 (5th Cir. 2014) ........ 7

Fontenot v. Upjohn Co.,
780 F.2d 1190 (5th Cir. 1986) ........ 7, 9

Fort Bend Cnty. v. Davis,
587 U.S. 541 (2019) ........ 9

Garcia v. Prof'l Contract Servs., Inc.,
938 F.3d 236 (5th Cir. 2019) ........ 17

Guzman v. Allstate Assurance Co.,
18 F.4th 157 (5th Cir. 2021) ........ 10

Harvill v. Westward Commc'ns, L.L.C.,
433 F.3d 428 (5th Cir. 2005) ........................................................................... 6

Ion v. Chevron USA, Inc.,
731 F.3d 379 (5th Cir. 2013) ..................................................................... 17, 18

Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.,
331 F.3d 452 (5th Cir. 2003) ........................................................................... 6

Little v. Liquid Air Corp.,
37 F.3d 1069 (5th Cir. 1994) (en banc) ............................................................ 8

Manuel v. Westlake Polymers Corp.,
66 F.3d 758 (5th Cir. 1995) ....................................................................... 5, 14

Pacheco v. Mineta,
448 F.3d 783 (5th Cir. 2006) ......................................................................... 13

Pegram v. Honeywell, Inc.,
361 F.3d 272 (5th Cir. 2004) ......................................................................... 12

Reeves v. Sanderson Plumbing Prods., Inc.,
530 U.S. 133 (2000) ......................................................................................... 9

Rhodes v. Guiberson Oil Tools Div.,
927 F.2d 876 (5th Cir. 1991) ......................................................................... 12

Seigler v. Wal-Mart Stores Tex., L.L.C.,
30 F.4th 472 (5th Cir. 2022) .......................................................................... 11

Steadman v. Texas Rangers,
179 F.3d 360 (5th Cir.1999) ............................................................................ 6

Sulzer Carbomedics v. Or. Cardio-Devices, Inc.,
257 F.3d 449 (5th Cir. 2001) ........................................................................... 6

S.W.S. Erectors, Inc. v. Infax, Inc.,
72 F.3d 489 (5th Cir. 1996) ........................................................................... 11

Tolan v. Cotton,
572 U.S. 650 (2014) (*per curiam*) ............................................................. 3, 8

United States v. Diebold, Inc.,
369 U.S. 654 (1962) ......................................................................................... 7

Wheat v. Fla. Par. Juvenile Justice Comm'n,
811 F.3d 702 (5th Cir. 2016) .......... 16

Willis v. Coca-Cola Enters., Inc.,
445 F.3d 413 (5th Cir. 2006) .......... 14, 16

Zipes v. Trans World Airlines, Inc.,
455 U.S. 385 (1982) .......... 9, 12

**Statutes**

29 C.F.R. §§ 825.113-.115 .......... 15

29 C.F.R. § 825.220(c) .......... 14-15

29 C.F.R. § 825.300(b)(1) .......... 15

29 C.F.R. § 825.300(c) .......... 15

29 C.F.R. § 825.301(a) .......... 15

29 C.F.R. § 825.301(b) .......... 5, 14

29 C.F.R. § 825.302(c) .......... 15

29 C.F.R. § 825.303(b) .......... 5, 14, 15

29 C.F.R. § 825.303(c) .......... 18

29 U.S.C. § 2611(11) .......... 15

29 U.S.C. § 2615(a)(1) .......... 14

42 U.S.C. § 12117(a) .......... 10

42 U.S.C. § 2000e-5(e)(1) .......... 10

**Rules**

Fed. R. Civ. P. 56 .......... 6, 8, 9

## INTRODUCTION

Plaintiff Terry McKenzie, Jr. ("Plaintiff" or "McKenzie") respectfully submits this memorandum of law in opposition to Defendant Helena Laboratories Corporation's ("Defendant" or "Helena") motion for summary judgment.

Defendant's motion overstates the record. As set forth below, the concrete documentary disputes, and the disputed facts raised, require a trial. Defendant's motion rests on two premises, each contradicted by its own evidence: first, that Plaintiff received notice of a final termination decision in February 2024, when Defendant's Human Resources representative was telling him to "just get better and come back," McKenzie Dep. 63:6-7; and second, that Plaintiff engaged in no protected activity, when he told his supervisor and Human Resources, in person and on repeated occasions, that he had a brain tumor, needed brain surgery, and could not work until the tumor was removed. Id. at 33:10-21; 37:8-13; 41:10-20. Because the timeliness of Plaintiff's administrative charge and the existence of protected activity each turn on disputed facts that only a jury may resolve, the motion should be denied.

## RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF GENUINE ISSUES[1]

1. Plaintiff worked for Defendant as a production employee. He discovered he had a brain tumor on January 3, 2024. Defendant's evidence demonstrates it terminated Plaintiff on January 30, 2024, after he was a no call/no show for three days. **Exhibit A. Plaintiff's termination document dated 1/30/24.**

**Response: Admit that Plaintiff worked as a production employee, and that he discovered he had a brain tumor on January 3, 2024. Deny that Plaintiff was terminated on January 30,**

---

[1] Filed with this brief is an Appendix ("App.") containing the Declaration of McKenzie and any other documents supporting Defendants' Statement of Uncontroverted Facts.

**2024, and deny that Plaintiff was a no call/no show for three days. Exhibit A is an internal form; Defendant offers no declaration from any witness with personal knowledge establishing when, how, or whether the decision it reflects was ever communicated to Plaintiff. ECF Docket Entry ("ECF") 18-1. McKenzie Dep. 61:8-14 ("Q. So in this visit in February 2024, you already know you've been terminated? A. No. When I went up there to visit, I didn't know I was terminated until I saw that paperwork. Q. Okay. So during that visit in February 2024, you learned you had been terminated? A. Yes"); 41:10-20 (Q. "During this first time visiting and talking with the company, did you tell anybody that you wouldn't be able to work? A. Yes. Q. Who did you tell that to? A. I told that to everyone. Everybody I talked to. […] I can't work until I get the tumor out"); 47:5-16 ("I […] specifically asked about what do I need to do about my job. […] The only specific thing I recall Janice [from human resources] said to me was don't worry about it, get better and come back; 65:11-14 ("I told [Janice] I was going to have my surgery and I'll be back when I'm well." Her response was "Okay. That she wished me well"); 63:6-7 ("And then she said again, just get better and come back"); McKenzie Decl. ¶¶ 4 ("I was never told that I was terminated on January 30, 2024"), 5-9 (In mid-February 2024, "[n]o one unequivocally informed me that I was no longer going to be employed;" "Based on that conversation, I understood that I was being granted leave"); 10-11 ("I only learned on April 30, 2024 that I had been terminated, as my employer informed me verbally that they were unwilling to put me back to work").**

2. Plaintiff's Notice of Application for unemployment benefits states: "I got a brain tumor on Jan 3, and I was told by Janet in mid Feb after my PTO ran out that I was terminated and to 'just focus on getting healthy and come back.'" **Exhibit B. TWC Notice of Application for Unemployment Benefits dated 6/2/24.**

**Response: Admit that this is what Plaintiff stated, but note that this statement by Plaintiff further contradicts Defendant's previous assertion that Plaintiff was terminated on January 30, 2024. Moreover, note that there remain issues of fact regarding the date of Plaintiff's termination and whether he was verbally informed of termination by Defendant; note that within this statement itself is an assurance by Defendant that Plaintiff could come back to work, regardless of Plaintiff's statement that he was terminated. McKenzie Dep. 47:5-16 ("I […] specifically asked about what do I need to do about my job. […] The only specific thing I recall Janice [from human resources] said to me was don't worry about it, get better and come back"); 65:11-14 ("I told [Janice] I was going to have my surgery and I'll be back when I'm well." Her response was "Okay. That she wished me well"); 63:6-7 ("And then she said again, just get better and come back"); McKenzie Decl. ¶¶ 4 ("I was never told that I was terminated on January 30, 2024"), 5-9 (In mid-February 2024, "[n]o one unequivocally informed me that I was no longer going to be employed"; "Based on that conversation, I understood that I was being granted leave"); 10-11 ("I only learned on April 30, 2024 that I had been terminated, as my employer informed me verbally that they were unwilling to put me back to work"). Further, the statement is unsworn, was made on a state agency form for an unrelated purpose, and, in any event, establishes at most what Defendant's Human Resources representative told Plaintiff-including the instruction to "just focus on getting healthy and come back"-which presents a question of credibility and inference for the jury, not a basis for summary judgment. See Tolan v. Cotton, 572 U.S. 650, 656-57 (2014) (*per curiam*).**

3. Plaintiff testified in his deposition he visited Defendant in February 2024 and during a visit that month he saw paperwork reflecting he had "already been terminated". **Exhibit**

**C- Deposition Excerpts of Plaintiff, P. 61, L. 1-14**. Plaintiff further confirmed by February 2024, he knew Defendant had terminated his employment. **Exhibit C- Deposition Excerpts of Plaintiff P. 73, L. 10-22**.

**Response: Admit that Plaintiff visited defendant in February 2024, but deny that Plaintiff was terminated on January 30, 2024, or that Plaintiff's subsequent notice of termination on April 30, 2024 was not discriminatory and retaliatory. McKenzie Dep. 47:5-16 ("I […] specifically asked about what do I need to do about my job. […] The only specific thing I recall Janice [from human resources] said to me was don't worry about it, get better and come back"); 65:11-14 ("I told [Janice] I was going to have my surgery and I'll be back when I'm well." Her response was "Okay. That she wished me well"); McKenzie Decl. ¶¶ 4 ("I was never told that I was terminated on January 30, 2024"), 5-9 (In mid-February 2024, "[n]o one unequivocally informed me that I was no longer going to be employed"; "Based on that conversation, I understood that I was being granted leave"); 10-11 ("I only learned on April 30, 2024 that I had been terminated, as my employer informed me verbally that they were unwilling to put me back to work"). Further, Plaintiff's testimony that he saw an unsigned document on a desk in Human Resources is not testimony that Defendant informed him of a final decision; in the same conversation, Human Resources told him to "just get better and come back." McKenzie Dep. 61:4-22; 63:6-7.**

4. Plaintiff never took FMLA leave and never applied for FMLA leave. **Exhibit C- Deposition Excerpts of Plaintiff, P. 73, L. 10-22**. He further testified he did not know what FMLA leave was in January 2024. **Exhibit C- Deposition Excerpts of Plaintiff- P. 73, L. 9-13; P. 75, L. 1-5**. He also admitted that from January 3 through May 2024, he did not provide

Defendant with FMLA paperwork on his own. **Exhibit C- Deposition Excerpts of Plaintiff- P. 73, L. 9-13; P. 75, L. 1-5**.

**Response: Deny. Plaintiff's repeated, in-person notice to his supervisor and Human Resources that he had a brain tumor, required brain surgery, and could not work until the tumor was removed was sufficient as a matter of law for Defendant to take upon the obligation to provide Plaintiff notice of his rights under the FMLA; he did not need to use the talismanic phrase "FMLA" to invoke his rights. See 29 C.F.R. §§ 825.301(b), 825.303(b) (an employee seeking leave for the first time "need not expressly assert rights under the FMLA or even mention the FMLA"); Manuel v. Westlake Polymers Corp., 66 F.3d 758, 762 (5th Cir. 1995). Plaintiff's unfamiliarity with the statute in January 2024 is therefore immaterial. The Company was obligated by law to inquire further about Plaintiff's need for FMLA leave and provide the required FMLA notices and information once it had sufficient notice of his need for leave; the Company was aware of Plaintiff's brain tumor and need for medical leave. McKenzie Dep. 37:8-38:2 (Plaintiff informed Janice from human resources that he had a brain tumor and had to have brain surgery; Janice was "very concerned," but did not otherwise inform Plaintiff of his rights under the FMLA); 41:10-20 (Plaintiff informed "everyone" that he can't work until he gets the tumor out); 49:17-50:9 (Plaintiff asked Janice what he needed to do about his job, and she merely responded something to the effect of "don't worry about it, just worry about getting better and come back"); 55:24-56:17 ("Q. In any of these three visits to Helena during January 2024, do you recall anybody telling you to go pick up FMLA paperwork? A. No, that -- I don't recall that. Nobody didn't tell me that. […] Q. During any of your three visits to Helena, did you ever ask what paperwork you**

**needed to fill out since you were not going to work? A. That's basically what I asked Janice. […]"); 75:1-6 ("If I would have been told that, I would have did that. I just wanted my job").**

5. Plaintiff dually filed his Charge of Discrimination with the EEOC and TWC on February 21, 2025. **Exhibit D. Charge of Discrimination dated 2/21/25.** In his Charge Plaintiff selected retaliation and disability as the basis for his ADA and Texas Labor Code claims. **Id.** Plaintiff filed his Original Complaint on December 5, 2025 (**Plaintiff's Original Complaint [Doc. 1]**) asserting claims for FMLA retaliation, ADA disability discrimination, ADA retaliation, Chapter 21 disability discrimination, and Chapter 21 retaliation. **Id.**

**Response: Admit.**

## STANDARD OF REVIEW

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute. […] 'If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial.'" See Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 433 (5th Cir. 2005), citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) and quoting Steadman v. Texas Rangers, 179 F.3d 360, 366 (5th Cir.1999).

"A material fact is one that 'might affect the outcome of the suit under the governing law' and a 'dispute about a material fact is 'genuine'... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" See Leasehold Expense Recovery, Inc. v. Mothers Work, Inc., 331 F.3d 452, 456 (5th Cir. 2003), citing Sulzer Carbomedics v. Or. Cardio-Devices, Inc., 257 F.3d 449, 456 (5th Cir. 2001) and quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. See Celotex, 477 U.S. at 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." See Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis added). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. See Celotex, 477 U.S. at 322-25; see also Id. at 331-32 (Brennan, J., dissenting); see also Fontenot, 780 F.2d at 1194.

"'[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.' […] If the moving party succeeds, the onus shifts to 'the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' […] The court must 'draw all reasonable inferences in favor of the nonmoving party' and 'refrain from making credibility determinations or weighing the evidence.' […]." See E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 694 (5th Cir. 2014) (internal citations omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' […], by 'conclusory allegations,' […], by

'unsubstantiated assertions,' […], or by only a 'scintilla' of evidence[…]. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. […] summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.' […]. If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." See Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (en banc) (internal citations omitted) (emphasis in original).

"[A] party must support any assertion that a fact cannot be or is genuinely disputed by '(a) citing to particular parts of materials in the record ...; or (b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact.' […]. […]" See Allen v. Coil Tubing Servs., L.L.C., 846 F. Supp. 2d 678, 688 (S.D. Tex. 2012), aff'd, 755 F.3d 279 (5th Cir. 2014) (citing Fed. R. Civ. P. 56(c)(1) and (4)).

The Supreme Court has repeatedly reversed summary judgment where the lower court credited the movant's evidence over the nonmovant's sworn account. See Tolan v. Cotton, 572 U.S. 650, 656-57 (2014) (*per curiam*) ("courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment"); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).

Critically, "[f]or a defendant to obtain summary judgment on an affirmative defense, it must establish beyond dispute all of the defense's essential elements." See Bank of La. v. Aetna U.S. Healthcare, Inc., 468 F.3d 237, 241 (5th Cir. 2006).

Failure to timely file an administrative charge is such an affirmative defense, and Defendant pleaded it as one. Def.'s Answer, Affirmative Defenses ¶¶ 5, 16 [ECF 4]. The charge-filing requirement is not jurisdictional; it is a mandatory claim-processing rule that, "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); see also Fort Bend Cnty. v. Davis, 587 U.S. 548-52 (2019). Defendant therefore bears the burden of establishing, beyond peradventure, the date on which Plaintiff received notice of the challenged decision. See Fontenot, 780 F.2d at 1194.

## ARGUMENT

### I. Defendant's Assertions Regarding the Status of Discovery Do Not Eliminate the Genuine Factual Disputes Presented.

Defendant argues that summary judgment is appropriate because Plaintiff has not propounded discovery requests and the parties have had an adequate opportunity to conduct discovery. ECF 18 at 6.

However, the fact that Plaintiff has not served discovery requests does not relieve Defendant of its burden under Rule 56. The dispositive inquiry remains whether the evidence establishes the absence of a genuine dispute of material fact and Defendant's entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Rule 56 does not condition a nonmovant's right to rely on his own sworn testimony on his having served discovery requests, and discovery in this action remains open until November 24, 2026. ECF 16; ECF 18 at 6. A nonmovant's own testimony, based on personal knowledge and setting forth specific facts, is competent summary-judgment evidence even if it is self-serving. See Guzman v. Allstate Assurance Co., 18 F.4th 157, 160-61 (5th Cir. 2021).

Here, Plaintiff relies upon his sworn deposition testimony, including testimony elicited during Defendant's own examination, establishing that Company personnel knew of his serious health condition, were informed of his inability to work, and were asked about his employment status during his medical absence.

Defendant cannot obtain summary judgment on the FMLA retaliation claim merely by emphasizing Plaintiff's failure to complete a formal leave application, which was never provided to him, while disregarding this testimony.

For these reasons, Defendant's Motion should be denied insofar as it seeks summary judgment on Plaintiff's FMLA retaliation claim.

## II. Defendant's Limitations Argument Does Not Address Plaintiff's Allegations Concerning Subsequent Refusals to Rehire Him.

Defendant seeks dismissal of Plaintiff's ADA and Chapter 21 claims based on its contention that Plaintiff was terminated on January 30, 2024, but did not file his administrative charge until February 21, 2025. ECF 18 at 6-8. However, Defendant's analysis focuses exclusively on Plaintiff's original termination which he never received notice of and without addressing the subsequent hiring decisions alleged in the Complaint.

Under the ADA, an employee in Texas generally must file an administrative charge within 300 days of the alleged discriminatory employment practice. 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(e)(1)).

Critically, the limitations period does not begin when an employer privately makes a decision; it begins when that decision is made and communicated to the employee. See Del. State Coll. v. Ricks, 449 U.S. 250, 258-59 (1980); see also Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (per curiam). Defendant concedes the rule: the period "begins when the employee is informed of the allegedly discriminatory employment decision." ECF 18 at 7.

Measured from April 30, 2024, the date on which Plaintiff attests he was first told that Defendant would not return him to work, Plaintiff's February 21, 2025 charge was filed on the 297th day, within the ADA's 300-day period. McKenzie Decl. ¶¶ 10-11; ECF 18-4. Plaintiff's account of that date is not a litigation construct: his charge, filed long before this motion, alleged that "McKenzie discovered that he was terminated on April 30, 2024." ECF 18-4.

Defendant's contrary date rests on an internal form, Exhibit A, that says nothing about when or whether it was communicated to Plaintiff, and on Plaintiff's testimony that he glimpsed a document on a desk in Human Resources during a February 2024 visit. ECF 18-1; McKenzie Dep. 61:4-22. But during that very visit, Human Resources told Plaintiff to "just get better and come back." McKenzie Dep. 63:6-7. A reasonable jury could find that an instruction to come back after surgery is the antithesis of notice of a final termination decision.

Nor may Defendant disregard Plaintiff's declaration as a sham. The sham-affidavit doctrine applies only where a declaration is "inherently inconsistent" with prior testimony; a declaration that "supplements rather than contradicts prior deposition testimony" must be considered. See Seigler v. Wal-Mart Stores Tex., L.L.C., 30 F.4th 472, 477 (5th Cir. 2022) (quoting S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 496 (5th Cir. 1996)). Plaintiff's declaration is consistent with his testimony: he saw a document on a desk, he was never given it, and he was told to get well and come back. Compare McKenzie Decl. ¶¶ 5-9, with McKenzie Dep. 61:4-22; 63:6-7.

At a minimum, Defendant is estopped from invoking the earlier date. Where an employer misleads an employee about the status of his employment and thereby causes him to delay filing, the employer "cannot properly assert the bar of the statutory filing period." See Rhodes v. Guiberson Oil Tools Div., 927 F.2d 876, 878-82 (5th Cir. 1991) (employer that told discharged

employee it would consider rehiring him estopped from relying on charge-filing deadline); see also Zipes, 455 U.S. at 393.

Here, Defendant's Human Resources representative repeatedly told Plaintiff not to worry about his job, to get better, and to come back, and Defendant later tested and interviewed him for re-employment. McKenzie Dep. 47:13-16; 50:7-9; 63:6-7; 65:21-66:6; 82:9-17.

The Supreme Court has recognized that a termination and a subsequent refusal to hire are distinct employment decisions, each potentially giving rise to an independently actionable claim. See AMTRAK v. Morgan, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'"); see also Pegram v. Honeywell, Inc., 361 F.3d 272, 280 (5th Cir. 2004). Thus, the untimeliness of an administrative charge concerning an earlier termination does not necessarily foreclose a claim arising from a separate, timely challenged refusal to rehire.

Here, Plaintiff maintains that he was only informed of his termination on April 30, 2024. McKenzie Decl. ¶¶ 4 ("I was never told that I was terminated on January 30, 2024"), 5-9 (In mid-February 2024, "[n]o one unequivocally informed me that I was no longer going to be employed;" "Based on that conversation, I understood that I was being granted leave"); 10-11 ("I only learned on April 30, 2024 that I had been terminated, as my employer informed me verbally that they were unwilling to put me back to work").

Moreover, the Complaint expressly alleges that, following his termination, Plaintiff was repeatedly led to believe he could be rehired, submitted further applications, participated in interviews, and was ultimately denied reemployment. Compl. ¶¶ 24-30. These allegations are supported in part by Plaintiff's deposition testimony. Plaintiff testified that, after his surgery, he

participated in an interview process with Defendant. McKenzie Dep. 65:24-66:6. He further testified that he applied for a warehouse position (in addition to his old job, and another position), was interviewed for the warehouse position, and received no subsequent response. Id. at 81:2-12; 82:6-83:1. That post-surgery testing and interview occurred in June or July 2024, McKenzie Dep. 32:6-8; 65:21-66:6, after April 27, 2024 and therefore within 300 days of the February 21, 2025 charge.

Defendant's motion does not separately analyze these subsequent employment decisions, their dates, or whether they were included within the scope of Plaintiff's administrative charge. The scope of exhaustion is determined not solely by the boxes selected on an EEOC charge, but also by the investigation reasonably expected to arise from its factual allegations. See Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006). Plaintiff's charge expressly alleged that, when he asked to be rehired, Defendant "told McKenzie that his position is no longer available." ECF 18-4. The refusal to rehire was thus squarely within the scope of the charge and of any investigation reasonably expected to grow out of it.

Accordingly, Defendant's showing that Plaintiff knew of his original termination in February 2024 does not, standing alone, establish that (i) he was informed of his termination then, as he was not; or that (ii) every subsequent alleged refusal to rehire him falls outside the applicable administrative filing periods. McKenzie Decl. ¶¶ 5-9 (In mid-February 2024, "although I saw a document on the desk that said that I was terminated, I was never given this document"; "Instead, I was told verbally to worry about getting well and come back after my surgery"; "[n]o one unequivocally informed me that I was no longer going to be employed"; "Based on that conversation, I understood that I was being granted leave"). Whether an independently actionable

rehire claim survives depends upon the date of the challenged decision and the scope of the administrative charge. Those matters must be addressed separately from the original termination.

## III. Plaintiff's FMLA Retaliation Claim Survives Summary Judgment Because He Was Not Required to Formally Apply for FMLA Leave.

Defendant's principal argument is that Plaintiff cannot establish protected activity because he never formally applied for FMLA leave, submitted FMLA paperwork, or expressly invoked the statute. ECF 18 at 8-9. However, this argument misstates the applicable legal standard and disregards Plaintiff's sworn testimony concerning his communications with Defendant.

The Fifth Circuit has expressly held that an employee need not invoke the FMLA by name to obtain its protections. See Manuel v. Westlake Polymers Corp., 66 F.3d 758, 764 (5th Cir. 1995). Rather, the relevant inquiry is whether the employee provided sufficient information to reasonably inform the employer that leave was needed for a serious health condition. Id.; See Willis v. Coca-Cola Enters., Inc., 445 F.3d 413, 417-18 (5th Cir. 2006). Likewise, under 29 C.F.R. §§ 825.301(b) and 825.303(b), an employee need not expressly assert rights under the FMLA or even mention the statute when providing notice of a qualifying need for leave.

Providing notice of the need for FMLA-qualifying leave is itself an attempt to exercise FMLA rights. The statute protects not only "the exercise of" but also "the attempt to exercise" FMLA rights, 29 U.S.C. § 2615(a)(1), and its implementing regulation forbids employers from using the taking of FMLA leave "as a negative factor in employment actions." 29 C.F.R. § 825.220(c). An employer cannot defeat a retaliation claim by terminating an employee before he has the opportunity to complete paperwork the employer never provided.

Once an employer receives information indicating that an employee's leave may qualify under the FMLA, the employer must provide the required eligibility notice within five business days, absent extenuating circumstances. See 29 C.F.R. § 825.300(b)(1). The employer must also

provide information concerning the employee's rights and responsibilities and, where necessary, inquire further to determine whether the leave qualifies under the FMLA. 29 C.F.R. §§ 825.300(c), 825.301(a), 825.302(c), 825.303(b) ("The employer will be expected to obtain any additional required information through informal means").

Here, Plaintiff's deposition establishes that Defendant was aware of his serious medical condition and need for medical leave. Plaintiff testified that, following his January 3, 2024 diagnosis, he informed his supervisor, Vickie Locke, that he had a brain tumor and needed brain surgery. McKenzie Dep. 33:10-21. Plaintiff likewise informed Janice in Defendant's Human Resources Department that he had a brain tumor and required surgery. Id. at 37:8-13. Moreover, Plaintiff expressly testified that he informed Company personnel that he could not work until his tumor was removed. Id. at 41:10-20. A brain tumor requiring surgical removal is a paradigmatic "serious health condition," as it involved both "inpatient care" and "continuing treatment by a health care provider." See 29 U.S.C. § 2611(11); 29 C.F.R. §§ 825.113-.115.

Significantly, Plaintiff also testified that he asked Janice what he needed to do about his employment while he was unable to work. Id. at 49:17-50:9; 56:7-17. Rather than providing instructions concerning FMLA leave, Janice responded that Plaintiff should not worry about his job, but should focus on getting better and returning to work. Id. at 50:2-9. Plaintiff further testified that nobody instructed him to obtain or complete FMLA paperwork. Id. at 55:24-56:17.

Plaintiff testified that, had anyone told him to obtain FMLA paperwork, "I would have did that. I just wanted my job." Id. at 75:1-6 ("Q. During any of the visits you paid to Helena from January to May 2024, do you recall anybody telling you at any point in time to go and pick up FMLA paperwork from HR? A. No, I don't recall that"). These facts are sufficient to raise a genuine dispute concerning whether Plaintiff notified Defendant of his need for potentially FMLA-

qualifying leave or concerning his termination. Unlike an employee who merely reports being sick without identifying a potentially serious health condition, Plaintiff specifically informed Defendant of his brain tumor, need for surgery, and inability to work. See Willis, 445 F.3d at 417-18.

Defendant cannot establish the absence of protected activity merely by demonstrating that Plaintiff did not complete an FMLA application. The relevant inquiry is whether Plaintiff sufficiently communicated his need for protected medical leave, not whether he possessed a working knowledge of the statute or submitted paperwork that Defendant never instructed him to complete.

Accordingly, Defendant has failed to establish that Plaintiff did not engage in activity protected under the FMLA.

## IV. Genuine Disputes of Material Fact Exist Concerning Whether Defendant Terminated Plaintiff in Retaliation for His Request for Medical Leave.

Defendant also argues that Plaintiff cannot establish a causal connection between protected activity and his termination. ECF 18 at 8-9. However, the record, viewed in the light most favorable to Plaintiff, permits a reasonable inference that Defendant terminated him because of his need for medical leave.

To establish a *prima facie* case of FMLA retaliation, a plaintiff must demonstrate that (1) he engaged in protected activity, (2) suffered an adverse employment action, and (3) a causal connection exists between the two. See Wheat v. Fla. Par. Juvenile Justice Comm'n, 811 F.3d 702, 705 (5th Cir. 2016).

A plaintiff may demonstrate causation through circumstantial evidence, including the timing of the termination and evidence calling into question the employer's stated explanation. See Ion v. Chevron USA, Inc., 731 F.3d 379, 389-95, n.17 (5th Cir. 2013). At the prima facie

stage, close timing alone suffices: the Fifth Circuit has found periods of two to two-and-a-half months sufficient. Garcia v. Prof'l Contract Servs., Inc., 938 F.3d 236, 243 (5th Cir. 2019); see Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (temporal proximity must be "very close"). Even accepting Defendant's own termination form's date (which Plaintiff disputes), it is dated less than four weeks after Plaintiff's diagnosis. ECF 18-1.

Here, Defendant acknowledges that Plaintiff discovered he had a brain tumor on January 3, 2024, and maintains that it terminated him on January 30, 2024, less than four weeks later.[2] ECF 18 at 3. During that period, Plaintiff had informed his supervisor and Human Resources that he had a brain tumor, needed surgery, and could not work until the tumor was removed. McKenzie Dep. 33:10-21; 37:8-13; 41:10-20.

Moreover, Defendant's assertion that Plaintiff abandoned his position by failing to call or report to work is contradicted by evidence that he personally communicated his medical condition and continuing inability to work to Company personnel. Plaintiff testified that he returned to Defendant's facilities on several occasions beginning in January 2024 and communicated with his supervisor and Human Resources concerning his condition and employment. Id. at 31:2-32:23; 41:10-20.

Plaintiff further testified that, when he asked Human Resources what he needed to do about his job, Janice assured him that he should focus on recovering and returning to work. Id. at 49:17-50:9. Yet Defendant maintains that it terminated Plaintiff for three days of unreported absences despite those communications.

An employer may ordinarily enforce its usual and customary attendance-notification requirements, including in the FMLA context. See Acker v. Gen. Motors, L.L.C., 853 F.3d 784,

[2] Plaintiff maintains that he first learned he was terminated on April 30, 2024.

789-90 (5th Cir. 2017). But Defendant's reliance on its termination document does not resolve whether Plaintiff had already provided sufficient notice of his continuing medical absence, whether applicable attendance procedures were communicated to him, or whether the asserted reason for termination accurately reflects the circumstances. The regulation itself excuses compliance with an employer's usual call-in procedures in "unusual circumstances," 29 C.F.R. § 825.303(c), and whether an employee who appeared in person at least three times in January 2024 to report his tumor and inability to work, and who was told by Human Resources not to worry about his job, satisfied any applicable procedure is a quintessential question of fact. McKenzie Dep. 31:22-32:13; 41:10-20; 50:7-9.

The timing of Plaintiff's termination, Defendant's knowledge of his need for surgery and medical leave, and the assurances made by Human Resources collectively raise questions concerning Defendant's stated reason for terminating his employment. In particular, the fact that Human Resources allegedly assured Plaintiff that he should recover and return to work, despite Defendant's position that he had abandoned his employment, permits an inference that the asserted reason for termination was not the complete explanation.

Although temporal proximity alone may not establish pretext, it may be considered together with other evidence undermining the employer's explanation. See Ion, 731 F.3d at 389-95 n.17.

Here, Plaintiff relies not merely on timing but also on his communications with management and Human Resources, the Company's knowledge of his condition, and the circumstances surrounding his alleged job abandonment.

At minimum, a reasonable jury could find that Plaintiff notified Defendant of his need for medical leave and that his request contributed to the decision to terminate him. These disputed

factual issues preclude summary judgment on Defendant's asserted grounds for dismissal of Plaintiff's FMLA retaliation claim.

**CONCLUSION**

Accordingly, Plaintiff respectfully requests that Defendant's motion for summary judgment be denied in its entirety.

Dated: Flushing, New York
October 22, 2026

Respectfully submitted,

**CONSUMER ATTORNEYS, PLLC**

*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
6829 Main Street
Flushing, NY 11367-1305
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
(917) 807-7819 (cellular)
ekataev@consumerattorneys.com

*Attorneys for Plaintiff*
*Terry McKenzie, Jr.*