IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

TERRY MCKENZIE, JR.,

Plaintiff,

v. Civil Action No. 1:25-cv-00572-MJT

HELENA LABORATORIES CORPORATION,

Defendant.

**DEFENDANT HELENA LABORATORIES CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

COMES NOW, Defendant HELENA LABORATORIES CORPORATION ("Defendant" or "Helena") through its undersigned counsel and replies to Plaintiff's Opposition to motion for summary judgment demonstrating to this Court that summary judgment is warranted in this matter for all of the following:

## I. INTRODUCTION

On October 1, 2026, Defendant filed a Motion for Summary Judgement in the matter of reference. [DOC. 18]. Plaintiff filed an Opposition on October 22, 2026. [DOC.19]. However, Plaintiff's Opposition does not identify any evidence creating a genuine dispute of material fact. Instead, it attempts to avoid Plaintiff's sworn deposition testimony through a later declaration (sham affidavit), where he conveniently attempts to recast his formal termination as an April 2024 event, and advances a purely speculative refusal-to-rehire theory unsupported by evidence of a discriminatory or retaliatory decision.

The material facts in this matter remain undisputed. That is, that Plaintiff learned during a February 2024 visit to Helena that he had been terminated. He filed his administrative charge on February 21, 2025. He did not submit medical documentation, complete leave paperwork, or request an accommodation before his termination. *See* Undisputed Material Fact No. 4 included in Defendant's Motion for Summary Judgment [DOC. 18]. Helena's Requests for Admissions provide additional support: Plaintiff is deemed to have admitted, among other matters, that Helena requested medical documentation, that he never picked up or completed FMLA or other leave documents, that he was reminded to obtain the documents, that he provided no medical documentation or doctor's notes excusing his January 2024 absences, that he did not request a reasonable accommodation, and that he knew of Helena's attendance policies.[1]

Plaintiff therefore cannot avoid summary judgment on his Americans with Disabilities Act (ADA) and Texas Labor Code, Chapter 21 (Chapter 21) claims by contradicting his deposition testimony concerning when he learned of his termination. Nor can he establish FMLA retaliation merely by showing that Helena knew he had a serious medical condition. Even assuming his oral communications supplied initial notice of a possible need for leave, the evidence establishes that Helena requested supporting documentation, Plaintiff supplied none, Plaintiff failed to report for scheduled work, and

---

[1] Helena served the Requests for Admissions on September 3, 2026. **EXHIBIT 1 and 2.** After no timely responses were received, Helena contacted Plaintiff's counsel in a good-faith effort to resolve the issue and requested responses by October 12, 2026. **EXHIBIT 3**. Plaintiff's counsel requested an extension through October 16, 2026, and Helena agreed. **EXHIBIT 3**. Plaintiff did not serve responses by the agreed deadline and has not responded. Rule 36(a)(3) provides that a requested matter is admitted unless the receiving party serves a signed answer or objection within 30 days, subject to a stipulated or court-ordered extension. Rule 36 of Fed Rules Civ Proc . Because Plaintiff did not respond even within the agreed extension, the Requests are deemed admitted.

Helena terminated him for attendance violations rather than for exercising an FMLA right. For these reasons, as explained in detail below, summary judgement is warranted.

## II. STATEMENT OF MATERIAL FACTS

Plaintiff worked for Helena as a production employee and learned on January 3, 2024, that he had a brain tumor. Helena's termination document reflects that his employment ended on January 30, 2024, following three days on which he failed to report to work or call Helena. *See* Undisputed Material Fact No. 1 included in Defendant's Motion for Summary Judgment [DOC. 18].

Plaintiff testified that he visited Helena in February 2024 and, during that visit, saw paperwork showing that he had already been terminated. When asked directly during his deposition whether he learned during that February visit that he had been terminated, Plaintiff answered, "Yes". *See* Undisputed Material Fact No. 3 included in Defendant's Motion for Summary Judgment [DOC. 18]. His unemployment-benefits application likewise stated that Helena informed him in "mid Feb[ruary]" that he had been terminated. *See* Undisputed Material Fact No. 2 included in Defendant's Motion for Summary Judgment [DOC. 18].

Plaintiff also testified that, from January 3 through May 2024, he did not provide Helena with any medical paperwork. He acknowledged that he did not know what FMLA leave was in January 2024 and did not recall anyone telling him during his January visits to pick up FMLA paperwork. *See* Undisputed Material Fact No. 4 included in Defendant's Motion for Summary Judgment [DOC. 18].

Plaintiff filed his administrative Charge of Discrimination with the EEOC on February 21, 2025, selecting disability and retaliation as the asserted bases for the charge.

He filed this lawsuit on December 5, 2025, asserting ADA disability-discrimination and retaliation claims, Chapter 21 disability-discrimination and retaliation claims, and a FMLA retaliation claim. *See* Undisputed Material Fact No. 5 included in Defendant's Motion for Summary Judgment [DOC. 18].

The deemed admissions (see Footnote 1 and **EXHIBITS 1-3**) further establish the following undisputed facts:

1. Plaintiff received Helena's Employee Handbook and knew Helena's attendance policies.

2. Helena requested medical documentation shortly after Plaintiff disclosed his diagnosis.

3. Plaintiff never picked up or completed FMLA or other medical-leave documents.

4. Plaintiff was reminded to pick up FMLA documents after his surgery.

5. Plaintiff provided no medical documentation or doctor's notes excusing his January 2024 absences.

6. Plaintiff failed to report for numerous scheduled workdays in January 2024 and did not provide Helena with excuses for those absences.

7. Plaintiff did not request a disability-related reasonable accommodation.

8. Before his termination, Plaintiff provided no medical documentation specifying a disability or supporting a request for accommodation.

9. **Plaintiff told the Texas Workforce Commission that Helena informed him in mid-February 2024 that he had been terminated**. (Emphasis added).

## III. LEGAL STANDARD

We adopt herein by reference the legal standard for summary judgment established in Defendant's Motion for Summary Judgment. Furthermore, summary judgment must be granted when the movant establishes that no genuine dispute exists as to any material fact

and that the movant is entitled to judgment as a matter of law. Rule 56 of Fed Rules Civ Proc.

Once Helena demonstrates the absence of evidence supporting an essential element on which Plaintiff bears the burden of proof, Plaintiff must go beyond his pleadings and identify specific evidence showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Conclusory allegations, a reformulation of the pleadings, or an unexplained contradiction of prior sworn testimony does not satisfy that burden.

A party cannot manufacture a fact dispute by submitting an affidavit that, without explanation, contradicts the party's own sworn deposition testimony. *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). Although the sham-affidavit doctrine applies only when the inconsistency is inherent and marked, **a court may disregard later affidavit testimony that is so inconsistent with the affiant's prior testimony that it constitutes an obvious sham**. *Johnson v. Bd. of Supervisors of La. State Univ.*, 90 F.4th 449, 458 (5th Cir. 2024). The doctrine does not apply when a declaration merely supplements or can be reconciled with prior testimony. *Seigler v. Wal-Mart Stores Tex.*, 30 F.4th 472, 477 (5th Cir. 2022).

## IV. ARGUMENT

### *A. Plaintiff's Later Declaration Does Not Create a Genuine Dispute About When He Learned of His Termination.*

Plaintiff's ADA and Chapter 21 claims remain untimely. Helena's Motion established that Plaintiff's February 21, 2025 Charge of Discrimination came more than 300 days after both the January 30, 2024 termination and Plaintiff's admitted February 2024 notice of that termination. Plaintiff does not dispute that the applicable filing periods are 300 days for his ADA claims and 180 days for his Chapter 21 claims. He instead argues

that he allegedly did not receive unequivocal notice until April 30, 2024, despite Plaintiff himself admitting under oath during his deposition that he knew he had been terminated mid-February, which he confirmed with the statement to that same end when he requested unemployment benefits before the Texas Workforce Commission. *See* Defendant's Motion for Summary Judgment EXHIBIT B. What Plaintiff tries to bring forth in his sham affidavit cannot be reconciled with Plaintiff's sworn testimony during his deposition, which he reaffirms in page 7 of his opposition, when he admits that during his deposition Plaintiff was asked:

*Q.So during that visit in February 2024, you learned you had been terminated?*

A. *Yes.*

**That sworn answer provided by Plaintiff during his deposition was direct and unequivocal**. It was not testimony that Plaintiff merely saw an ambiguous document or suspected that he might later be terminated. He expressly agreed that he learned during the February 2024 visit that Helena had terminated him. His unemployment-benefits statement independently confirms the same point: he reported that he was told in mid-February 2024 that he had been terminated.

Plaintiff's sham affidavit self-servingly attempts to undo his previous sworn testimony during deposition, by conveniently attempting to avoid summary judgment now claiming that he only learned on April 30, 2024 that he had been terminated. That statement does not supplement his deposition; it supplies a different date for the same event. The two statements cannot both be true. Plaintiff cannot testify under oath that he learned of his termination in February and then attempt to create a trial issue by declaring that he first learned of it in April. **An unexplained declaration that directly contradicts prior sworn**

**testimony cannot manufacture a genuine dispute**. *Doe ex rel. Doe v. Dallas Indep. Sch. Dist*., 220 F.3d 380, 386 (5th Cir. 2000).

Plaintiff's reliance on the demanding standard for disregarding an affidavit does not change the result. The doctrine's high threshold protects later testimony that supplements or can reasonably be reconciled with earlier testimony. *Rodriguez v. City of Corpus Christi,* 129 F.4th 890, 897 (5th Cir. 2025). Here, the declaration contradicts Plaintiff's answer to the precise question at issue: when he learned Helena had terminated him. The Court need not disregard the entire declaration; it need only reject the inherently inconsistent assertion that Plaintiff first learned of his termination on April 30, 2024.

As if all of the above were not enough, Plaintiff's own contemporaneous actions support the fact he knew he had been terminated by mid-February 2024. Plaintiff filed for unemployment benefits before the Texas Workforce Commission (TWC). When he requested unemployment benefits before the TWC he expressly told the agency he learned of his termination in mid-February also. Defendant's Motion for Summary Judgment EXHIBIT B**.** A self-serving sham affidavit cannot simply erase the reality.

Nor does the alleged statement that Plaintiff should focus on his health and "come back" change when he learned of the termination. Plaintiff may have hoped Helena would employ him again after his recovery, but that hope does not contradict his sworn admission that he learned of the existing termination in February. His administrative charge, filed on February 21, 2025, was therefore untimely under the filing periods identified in Helena's Motion. Summary judgment remains warranted on the ADA and Chapter 21 claims arising from his termination.

### *B. Plaintiff's Refusal-to-Rehire Argument Does Not Save His ADA or Chapter 21 Claims.*

Plaintiff next argues that applications submitted after his termination created separate, timely refusal-to-rehire claims. But the summary-judgment evidence cited in the Opposition shows only that Plaintiff applied for two or three Helena positions, including a warehouse position and his former position, and interviewed for one position. Plaintiff's deemed admissions similarly establish only that he applied for and discussed other Helena positions and that a Helena employee sent him job postings.

None of that evidence shows that Helena rejected an application because of Plaintiff's disability or in retaliation for protected activity. Plaintiff identified Helena's alleged retaliation as "[f]iring me" and "not hiring me back," explaining only that he felt matters would have been different if he had not experienced the brain tumor and surgery. That subjective belief does not identify a decisionmaker, a discriminatory statement, a retaliatory statement, a materially similar applicant, or any evidence connecting a hiring decision to protected conduct.

Plaintiff bears the burden of identifying specific evidence from which a factfinder could find for him; he cannot rely on the allegations in his pleading. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Evidence that Plaintiff applied, interviewed, and did not receive a position does not, without evidence of discriminatory or retaliatory causation, create a genuine issue for trial. The refusal-to-rehire theory therefore neither cures the untimeliness of the termination-based claims nor supplies an evidentiary basis for denying Helena's Motion.

### C. *Plaintiff's FMLA Retaliation Claim Fails Even Assuming Arguendo His Oral Communications Constituted Initial Notice of a Potential Need for Leave.*

Plaintiff correctly observes that an employee need not use the term "FMLA" when communicating a need for leave. The relevant notice inquiry depends on whether the information given to the employer reasonably apprised it that the employee sought time off for a serious health condition. *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995). That principle does not resolve this case, however, because Helena's Motion does not rest solely on Plaintiff's failure to utter the term "FMLA."

An FMLA retaliation plaintiff must show protected activity, a materially adverse action, and a causal link between the two. *Wheat v. Fla. Parish Juvenile Justice Comm'n,* 811 F.3d 702 (5th Cir. 2016). If the employer identifies a legitimate, nonretaliatory reason for the action, the employee must offer evidence from which the stated reason could be found pretextual. *McArdle v. Dell Prods.*, L.P., 293 Fed. Appx. 331, 334 (5th Cir. 2008). Plaintiff's evidence does not meet that burden. Even assuming that his oral disclosure of a brain tumor and need for surgery supplied initial notice of potentially qualifying leave, the undisputed evidence establishes that Helena requested medical documentation and that Plaintiff never provided it. Plaintiff is deemed to have admitted that Helena requested documentation, that he never picked up or completed FMLA or other medical-leave paperwork, that he was reminded to obtain the paperwork, and that he provided no medical documentation or doctor's notes excusing his January absences. Federal law permits an employer to require timely health-care-provider certification supporting a request for qualifying leave. 29 USCS § 2613.

The admissions also foreclose Plaintiff's contention that Helena denied him the opportunity to complete paperwork. His Opposition relies on his deposition statement that he did not recall being told during three January visits to pick up FMLA paperwork. But a lack of recollection is not affirmative evidence that Helena never provided or requested it. More importantly, Plaintiff is deemed to have admitted that Helena requested medical documentation, that he never picked up or completed the leave documents, and that he was reminded to pick them up after surgery.

The attendance evidence is likewise unrebutted. Plaintiff is deemed to have admitted that he did not report for numerous scheduled workdays in January 2024 and did not provide excuses for those absences. Helena's termination document identifies unreported absences as the reason for ending his employment. Thus, this is not a case in which the employer's stated reason is contradicted by its own records. Helena's explanation is consistent with Plaintiff's admissions and his deposition testimony that he submitted no medical paperwork. Documented attendance and performance violations constitute evidence of a legitimate reason for discharge independent of protected leave. *Mauder v. Metro. Transit Auth. of Harris County*, 446 F.3d 574, 583 (5th Cir. 2006).

Plaintiff relies primarily on temporal proximity—the fact that his termination occurred weeks after his diagnosis. Temporal proximity may bear on a prima facie causal inquiry, but Plaintiff still must present evidence rebutting Helena's documented reason with evidence of sufficient quality and weight to permit a reasonable factfinder to reach a different conclusion. *Way v. City of Missouri City*, 133 F.4th 509, 525 (5th Cir. 2025). He has not done so.

The record contains no evidence that Helena's attendance explanation was false, shifted over time, or conflicted with its records. To the contrary, Plaintiff's deemed admissions confirm the material facts underlying that explanation. Helena knew about Plaintiff's condition, requested documentation, received none, and terminated him after he failed to report for scheduled work without providing excuses. Knowledge of a medical condition, without evidence that Helena's stated reason was false or retaliatory, does not create a fact issue on pretext. Accordingly, Plaintiff's FMLA retaliation claim fails whether analyzed at the protected-activity, causation, or pretext stage. His failure to use the term "FMLA" is not dispositive; his failure to produce evidence connecting his termination to protected activity is.

### *D. The Deemed Admissions Confirm the Absence of a Genuine Dispute on Plaintiff's Remaining Theories.*

The Requests for Admissions reinforce Helena's showing on each claim. Plaintiff admitted that he knew Helena's attendance policies, failed to report for scheduled work, supplied no excuses or medical documentation, did not complete leave paperwork, and did not request a reasonable accommodation. He also admitted that he told the Texas Workforce Commission he learned of his termination in mid-February 2024.

Under Rule 36, a requested matter is admitted when the responding party fails to serve a signed answer or objection within 30 days, unless the parties stipulate to a different response period or the Court orders otherwise. Rule 36 Fed Rules Civ Proc . Helena agreed to Plaintiff's requested extension through October 16, 2026, but Plaintiff did not serve responses by that agreed date. The admissions therefore stand and may be considered with Helena's termination record, Plaintiff's unemployment statement, and Plaintiff's deposition testimony.

The Opposition does not identify contrary competent evidence. Its central contentions—that Plaintiff first learned of his termination in April, that Helena never requested documentation or directed him to obtain leave papers, and that his absences were adequately reported—are contradicted by his deposition, his agency statement, or his deemed admissions. Rule 56 requires specific evidence, not a competing narrative unsupported by the summary-judgment record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## V. CONCLUSION AND PRAYER FOR RELIEF

Plaintiff has not created a genuine dispute of material fact. His own deposition establishes that he learned of his termination in February 2024, making his February 21, 2025 administrative charge untimely under the filing periods identified in Helena's Motion. His subsequent applications do not establish a discriminatory or retaliatory refusal to rehire. And his FMLA retaliation claim fails because the evidence establishes that Helena requested documentation, Plaintiff provided none, Plaintiff failed to report for scheduled work or excuse his absences, and no evidence shows that Helena's attendance-based reason was pretextual.

Helena respectfully requests that the Court grant its Motion for Summary Judgment, enter judgment in Helena's favor on all claims, dismiss Plaintiff's claims with prejudice, award Helena its taxable costs, and grant all other relief to which Helena is entitled.

## X. PRAYER FOR RELIEF

Defendant respectfully requests the Court grant this Motion, enter summary judgment in Defendant's favor on all of Plaintiff's claims, dismiss those claims with

prejudice, award Defendant its taxable costs, and grant all other relief to which Defendant is entitled.

Respectfully Submitted,

*/s/ Sonia B. Alfaro*
**SONIA B. ALFARO**
State Bar No. 24086849
S.D. of Texas Bar No. 2898190
ALFARO & ASSOCIATES
1330 Post Oak Blvd. Suite 801
Houston, TX 77056
Telephone: (713) 403-3125
Facsimile: (855) 602-8224
Email: salfaro@meaderslaw.com

**ATTORNEYS FOR DEFENDANT HELENA LABORATORIES CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October 2026, I electronically filed the foregoing document with the Clerk of the Court for the FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION, using the CM/ECF system which will send notification of such filing to the following:

Emanuel Kataev
Consumer Attorneys
PLLC 68-29
Main Street Flushing
NY 11367
ekataev@consumerattorneys.com

*/s/ Sonia B. Alfaro*
Sonia B. Alfaro